TURNER LAW FIRM, LLC
**BY: ANDREW R. TURNER, ESQ.**
76 South Orange Avenue - PO Box 526
South Orange, New Jersey 07079
973-763-5000
Attorneys for Plaintiff
**ART 8574**

| | |
|---|---|
| Plaintiff<br><br>CARL SCHAEDEL and COMPANY, INC.<br><br>vs.<br><br>Defendants<br><br>DEAL PURCHASING, INC. individually and doing business as INNERSPACE; RONALD FERRAR; KATHERINE FERRARA; and, INNERSPACE WHOLESALE APPLIANCE INC. | UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY<br><br>Case No. 10-cv-00462 (SDW)<br><br>Civil Action<br><br><br><br>AMENDED COMPLAINT |

The Plaintiff, whose address is 4 Sperry Road, Fairfield (Essex County), New Jersey, complaining of the Defendants, and by way this amended complaint filed as a matter of course pursuant to F.R.C.P. 15, says:

NATURE OF ACTION

1. This is an action brought by an unpaid seller of goods and materials in the principal amount of $155,408.17 pursuant to an account and agreement between the parties.

2. The complaint also seeks to enforce the plain terms of the credit application and personal guaranty executed by the Defendants which provides for an additional thirty (30%) percent

collection charge on the entire unpaid balance to be added in the event the account is placed with a bonded collection agency or an attorney for collection. The said thirty percent collection charge is $46,622.45.

3. The amount sought in this lawsuit is $202,030.62, exclusive of interest and finance charges from the date of the statement which is annexed to this complaint.

4. Plaintiff also seeks interest on its claim from July 22, 2009 (statement date) calculated at the rate of twelve (12%) percent per annum in accordance with the written agreement between the parties, for a total of $9,605.50.

5. The total amount sought in the complaint is $211,636.12, plus continuing interest and costs.

PARTIES

6. Plaintiff, Carl Schaedel and Company, Inc. ("Plaintiff" or "Schaedel") is a New Jersey corporation with its principal place of business located at 4 Sperry Road, Fairfield, New Jersey 07004.

7. Schaedel is in the business of distributing kitchen appliances and related equipment to the trade.

8. Defendant Deal Purchasing Inc. d/b/a Innerspace ("Deal") is a Pennsylvania corporation with its principal place of business at 130 Eagleview Boulevard, Exton (Chester County), Pennsylvania 19341.

9. Defendant Deal is in the business of selling appliances to consumers.

10. Defendant Ronald Ferrara ("Ferrara") is an individual person and resident of Pennsylvania.

11. Ferrara maintains his place of residence at 1214 Pickering Lane, Chester Springs (Chester County), Pennsylvania 19425.

12. Ferrara listed his name as President of Deal on the credit application and personal guaranty he executed in favor of Plaintiff.

13. Defendant Katherine Ferrara ("Katherine") is an individual person and resident of Pennsylvania.

14. Katherine maintains her place of residence at 1214 Pickering Lane, Chester Springs (Chester County), Pennsylvania 19425.

15. Katherine executed and delivered to Plaintiff a dealer agreement dated May 15, 2007 in which she lists herself as President of Deal.

16. Defendant Innerspace Wholesale Appliance Inc. ("Innerspace") is a Pennsylvania corporation which also maintains its place of business at 130 Eagleview Boulevard, Exton, Pennsylvania 19341.

17. Innerspace is the successor-in-interest and/or alter-ego of Deal and has interacted to obtain refunds, rebates, and/or other credits for merchandise sold and delivered by Plaintiff.

18. Ferrara is President of Innerspace.

JURISDICTION & VENUE

19. Jurisdiction is vested in the United States District Court for an action such as this which is founded on diversity of citizenship and amount in controversy. 28 U.S.C. 1332.

20. Schaedel is a citizen of New Jersey as it is incorporated under the laws of New Jersey, having its principal of business in New Jersey, and Defendants are citizens of Pennsylvania with the corporate entities being formed and organized under the laws of Pennsylvania, and the individual defendant being a resident of Pennsylvania with his principal place of residence there.

21. The matter in controversy, exclusive of interest and costs, is $202,030.62 and exceeds the sum specified by 28 U.S.C. 1332.

FACTS COMMON TO ALL COUNTS

22. Deal executed and delivered to Plaintiff a credit application and personal guaranty ("Application") on or about July 25, 2005.

23. A true and correct copy of the Application (redacted for any personally identifying account information) is annexed as Exhibit A.

24. The Application set forth the full legal name of the applicant company as "Deal Purchasing Inc. d/b/a Innerspace" with an address at 130 Eagleview Boulevard, Exton, Pennsylvania 19341.

25. The Application also listed Ferrara as its President with a home address of 1214 Pickering Lane, Chester Springs, Pennsylvania 19425.

26. The Application specifically set forth the personal guaranty of Ferrara.

27. Ferrara executed the Application.

28. In reliance upon the executed Application, Plaintiff sold and delivered goods to the Defendants.

29. Katherine executed and delivered to Plaintiff a "dealer agreement" ("Agreement") dated May 15, 2007.

30. A true and correct copy of the Agreement (redacted for any personally identifying account information) is annexed as Exhibit B.

31. The Agreement set forth Katherine as President (and she so signed) of Deal.

32. The Agreement authorized Deal to serve on a non-exclusive basis as a retailer of selected product lines in Plaintiff's current sales program.

33. The Agreement provided Deal was to make prompt payment of all invoices rendered by Plaintiff in accordance with then-current payment terms as published by Plaintiff, and further provided Deal agreed to pay all late charges as published by Plaintiff within allowable law.

34. In reliance upon the executed and accepted Agreement, Plaintiff sold and delivered goods to the Defendants.

FIRST COUNT - BOOK ACCOUNT

35.  Plaintiff repeats the allegations contained in the preceding paragraphs as though set forth herein at length.

36.  Defendants owe Plaintiff the sum of $155,408.17 according to the account summary annexed as Exhibit C.

37.  The amount due is set forth in the summary of invoices reflecting goods sold and delivered by Plaintiff to Defendants pursuant to the written agreement between the parties.

38.  Plaintiff sues Defendants on the said book account and for the reasonable value of merchandise it sold and delivered, which amounts are reflected in each invoice set forth on Exhibit B.

39.  Credit has been given for all payments and set-offs, and there remains due and owing the sum of $155,408.17 which amount Defendants agreed to pay.

40.  Notwithstanding Plaintiff's demands, Defendants have failed, refused, and neglected to make payment.

41.  Plaintiff is entitled to interest on its claim based upon the plain terms of the written agreement between the parties which provides for interest at the rate of twelve (12%) percent per annum.

42.  The calculated interest on this claim since July 22, 2009 (date of statement) is $9,605.50.

43.  Plaintiff reserves the right to calculate additional interest up to the time it applies for final judgment.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and individually, on this count in the sum of $165,013.67,

plus interest and costs, together with such other relief as the Court deems fair, just, and equitable.

## SECOND COUNT - BREACH OF CONTRACT

44. Plaintiff repeats the allegations contained in the preceding paragraphs as although set forth herein at length.

45. Plaintiff and Defendants entered into a contract to which Plaintiff would sell and deliver goods and merchandise as ordered.

46. In accordance with the written agreement between the parties, Defendants would pay Plaintiff for the fair and reasonable value of the merchandise sold and delivered as ordered.

47. Defendants placed orders for goods and materials sold by Plaintiff.

48. The orders were placed under the name Deal d/b/a Innerspace with directions for delivery to its address.

49. At all relevant times, Deal and Innerspace operated from the same address.

50. Plaintiff processed the orders in accordance with Defendants' requests and delivered the merchandise, as ordered.

51. The orders were placed, sold, and delivered pursuant to the written agreement between the parties, including the Application (Exhibit A) and Agreement (Exhibit B).

52. Notwithstanding Plaintiff's performance, Defendants have failed, refused, and neglected to make payment for the same.

53. Pursuant to the agreement between the parties, and goods sold and delivered by Plaintiff, Defendants are indebted to the Plaintiff for the principal sum of $155,408.17.

54. Plaintiff is also entitled to interest on its claim pursuant to the written agreement between the parties, which amount equals $9,605.50, for a total claim of $165,013.67.

55. Plaintiff reserves the right to calculate additional accrued interest at the time it applies for judgment.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and individually, on this count in the sum of $165,013.67, plus continuing interest and costs, together with such other relief as the Court deems fair, just, and equitable.

THIRD COUNT - UNJUST ENRICHMENT

56. Plaintiff repeats the allegations contained in the preceding paragraphs as although set forth herein at length.

57. Defendants have been unjustly enriched as the result of the failure to make payment to Plaintiff for goods sold and delivered.

58. In accordance with the written agreement between the parties, Plaintiff sold and delivered goods and merchandise to Defendants with a fair and reasonable value of $155,408.17. Defendants failed to make payment for the goods and merchandise.

59. Upon information and belief, Defendants have sold some or all of the goods delivered by Plaintiff to Defendants' retail customers.

60. Defendants failed to make payment to Plaintiff for the said goods and merchandise.

61. Since Defendants had the use, benefit, enjoyment, and/or opportunity to offer for re-sale the goods and merchandise sold and delivered by Plaintiff, Defendants have been unjustly enriched to the extent of the reasonable value of the same.

62. Plaintiff is also entitled to interest for the period of time during which Defendants have been unjustly enriched through the possession and/or re-sale of the said goods without payment for the same.

63. The fair and reasonable value of goods and merchandise sold and delivered by Plaintiff to Defendants is $155,408.17.

64. The interest due Plaintiff is calculated at the rate provided in the written agreement between the parties and amounts to $9,605.50.

65. Plaintiff reserves the right to calculate additional accrued interest up to the time it applies for judgment.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and individually, on this count in the sum of $154,013.67, plus interest and costs, together with such other relief as the Court deems fair, just, and equitable.

FOURTH COUNT

AGREED CONTRACTUAL COLLECTION CHARGES

66. Plaintiff repeats the allegations contained in the preceding paragraphs as although set forth herein at length.

67. Defendants Deal and Ferrara executed and delivered a credit application and personal guaranty to Plaintiff which is annexed as Exhibit A.

68. Pursuant to the terms of the Application, in the event of default and the claim being placed with a bonded collection agency or attorney, it was agreed an additional thirty (30%) percent collection charge would be paid on the entire unpaid balance, which the parties agreed was fair and reasonable.

69. The Defendants are obligated to the Plaintiff for payment of the agreed collection charge.

70. The agreed collection charge of thirty percent of the principal balance of $155,408.17 is $46,622.45.

WHEREFORE, Plaintiff demands judgment against Defendants Deal and Ferrara, jointly and individually, on this count in the sum of $46,622.45, plus interest and costs, together with such other relief as the Court deems fair, just, and equitable.

## FIFTH COUNT - PERSONAL GUARANTY

71. Plaintiff repeats the allegations contained in the preceding paragraphs as although set forth herein at length.

72. Defendant Ferrara executed and delivered to Plaintiff his personal guaranty of all indebtedness of Deal d/b/a Innerspace as set forth on the annexed Exhibit A.

73. Notwithstanding Plaintiff's demands, the defendants have not paid Plaintiff for the goods and merchandise sold and delivered as set forth in the preceding counts.

74. As a result of his personal guaranty of the corporate indebtedness, Ferrara is liable to Plaintiff for the outstanding balance.

75. Notwithstanding Plaintiff's demands, Ferrara has failed, refused, and neglected to make payment.

76. Ferrara is indebted to Plaintiff for the total indebtedness of the corporate defendants which amounts to $211,636.12.

WHEREFORE, Plaintiff demands judgment against Defendant Ferrara on this count in the sum of $211,636.12, plus interest and costs, together with such other relief as the Court deems fair, just, and equitable.

## SIXTH COUNT - FRAUD/ALTER-EGO

77. Plaintiff repeats the allegations contained in the preceding paragraphs as although set forth herein at length.

78. On or about July 25, 2005, Defendants Deal and Ferrara executed and delivered to Plaintiff a credit application and personal guaranty, a copy of which is annexed as Exhibit A.

79. The Application set forth the "full legal name of the company" seeking credit from Plaintiff as "Deal Purchasing Inc. d/b/a Innerspace."

80. Deal listed its address as 130 Eagleview Boulevard, Exton, Pennsylvania, and stated it was in the business of "retail appliance and video."

81. Deal also stated it was established in 1980.

-11-

82. On or about May 15, 2007, Deal and Katherine executed and delivered to Plaintiff the Agreement annexed as Exhibit B.

83. Pursuant to the Application and approval of same, Plaintiff sold and delivered goods and merchandise to Deal as ordered.

84. Following execution of the Agreement, the parties continued to conduct business.

85. In the Application (Exhibit A), Ferrara listed himself as President of Deal.

86. In the Agreement (Exhibit B), Katherine listed herself as President of Deal.

87. Upon information and belief, Katherine and Ferrara regarded corporate titles and inter-changed their identities and/or corporate designations to their benefit and to the detriment of creditors such as Plaintiff herein.

88. Deal did not disclose the name of "Innerspace Wholesale Appliance Inc." to Plaintiff as part of the application and dealer agreement process.

89. Deal, Katherine, and Ferrara also operate under the business name "Innerspace Wholesale Appliance Inc." which is also located at Deal's address of 130 Eagleview Boulevard, Exton, Pennsylvania.

90. Because Defendants did not disclose the name of Innerspace Wholesale Appliance Inc., Plaintiff did not seek a credit application from that entity or otherwise establish an account in the name of Innerspace.

-12-

91. Although Deal executed the Application, which was guaranteed by Ferrara, and under which Plaintiff opened the account Ferrara specifically requested that refunds be made payable to "Innerspace Wholesale Appliance Inc."

92. Upon information and belief, Innerspace is the successor-in-interest and/or publicly identified name by which Deal and Ferrara sell appliances to the public.

93. Requests by Ferrara for reimbursement and/or payment were made to Plaintiff and other individuals on October 27, November 3, and December 11, 2009.

94. Katherine executed and delivered to Plaintiff U-Line SPIFF claim forms ("Forms") requesting refunds and credits. The Forms were received by Plaintiff on May 20, 2009 and requested credit for deliveries made on April 3, 14, and 20, 2009.

95. Katherine executed the Forms and specifically requested refunds under her name and Social Security number.

96. The merchandise sold to the public is purchased on the account of Deal and guaranteed by Ferrara.

97. Refunds or credits from Plaintiff are requested by Katherine under her name and Social Security number.

98. Upon information and belief, Deal lacks sufficient assets and/or operations to satisfy Plaintiff's claim and transfers goods and merchandise purchased from Plaintiff.

99. Upon information and belief, Deal and Ferrara applied for credit from Plaintiff using the Deal name in order to induce

Plaintiff to extend credit for goods and merchandise it sold and delivered.

100. Deal, Katherine, and Ferrara transferred the goods to Innerspace (without value) for sale to the public without payment to Plaintiff.

101. Defendants issued receipts to their retail customers under the name "Innerspace Appliances."

102. As a result of the transactions, specific directions, and/or oversight of Katherine and Ferrara, Innerspace is liable to Plaintiff for any goods which were obtained on the account of Deal and guaranteed by Ferrara; and/or for which Katherine sought refunds or SPIFF claims.

103. The value of the goods sold and delivered by Plaintiff is $155,408.17.

104. There is also due the sum of $46,622.45 which is the agreed collection charge and a specific term of agreement between Plaintiff, Deal, Katherine, and Ferrara, upon which Plaintiff relied when it sold and delivered merchandise pursuant to the credit application and personal guaranty, as well as the dealer agreement.

105. In addition, Plaintiff is entitled to interest on its principal claim of $155,408.17 at the rate of twelve (12%) percent per annum in accordance with the written agreement between the parties, which amount is $9,605.50.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and individually, on this count in the sum of $211,636.12,

plus interest and costs, together with such other relief as the Court deems fair, just, and equitable.

                              TURNER LAW FIRM, LLC
                              Attorneys for Plaintiff

                              BY: /s/ Andrew R. Turner
                                    ANDREW R. TURNER

Dated: March 19, 2010

JUL-25-2005  09:43      Carl Schaedel & Co                       973 244 0822     P.01/01

**CARL SCHAEDEL & CO., INC., 4 SPERRY ROAD, FAIRFIELD, NJ 07004 (973) 244-1311, FAX (973) 244-0822**

### CREDIT APPLICATION & PERSONAL GUARANTEE

FULL LEGAL NAME OF COMPANY: DEAL PURCHASING, INC   DBA INNERSPACE
STREET ADDRESS: 130 EAGLEVIEW BLVD
CITY: EXTON   STATE: PA   ZIP CODE: 19341
TELEPHONE # (BUSINESS): 610 363-6366   (RESIDENCE): 
STATE TYPE AND NATURE OF BUSINESS: RETAIL APPLIANCE + VIDEO   DATE ESTABLISHED: 1980
DUN & BRADSTREET DUNNS #: ____   FEDERAL TAX ID: ____
WE ARE: CORPORATION  X   PARTNERSHIP ___   PROPRIETORSHIP ___   LLC ___

Is Sales Tax to be charged? (please circle one)  YES  (NO)  If NO, please attach a copy of your State Resale Certificate form indicating your State Certificate of Authority number.

**PRINCIPALS, OWNERS OR OFFICERS ARE:**

NAME: RONALD FERRARA   HOME ADDRESS: 1214 PICKERING LN, CHESTER SPRING PA
TITLE: PRESIDENT   HOME PHONE: 610-827-1375   SS#: ____

NAME: ____   HOME ADDRESS: ____
TITLE: ____   HOME PHONE: ____   SS#: ____

**TRADE REFERENCES**

| NAME | ADDRESS | PHONE # & FAX # |
|---|---|---|
| 1) FRETZ CORP. | 2001 WOODHAVEN RD. PHILA. PA 19116 | P- 866-987-2121  F- 215-671-8340 |
| 2) MIELE, INC | 9 INDEPENDENCE WAY PRINCETON, N.J. | P- 800-843-7231  F- 609-419-9298 |
| 3) CAPITOL SOLUTIONS | 500 MONTANY DR ST JOSEPH ME 49085 | P- 888-485-7425  F- 616-982-5336 |
| 4) EASTERN MARKETING | 24 EISENHOWER PKW ROSELAND NJ 07068 | P- 973-403-8900  F- 973-403-9814 |
| 5) ALMO DISTRIBUTING | 2709 COMMERCE WAY PHILADELPHIA PA 19154 | P- 215-698-4000  F- 215-698-4070 |

**BANK REFERENCES**

NAME: WACHOVIA BANK   ACCOUNT NUMBER: ____
ADDRESS: 110 EAGLEVIEW BLVD, EXTON, PA   OFFICER: WARREN WOLFE   PHONE: 610-524-2111

NAME: ____   ACCOUNT NUMBER: ____
ADDRESS: ____   OFFICER: ____   PHONE: ____

INDICATE APPROXIMATE AMOUNT OF MONTHLY PURCHASES EXPECTED: ____

We certify that the above information is true and correct and we agree to pay this open account, if approved, in accordance with Carl Schaedel & Co.'s credit terms. I further agree to pay a fee of $30.00 for any check returned by the bank, and a 1% finance charge per month on any past due balances. I also hereby authorize Carl Schaedel and Company and/or their authorized agent to check applicant's and applicant's principals' credit history and trade, bank and personal references (whether or not referenced in the credit application) for customary credit information, to confirm the information contained on this application, including but not limited to, sending a copy hereto to the trade and bank references, and to release information to other creditors regarding applicant's credit experience with Carl Schaedel and Company. Please note any past due accounts will be reported to Dun & Bradstreet.

Personal Guarantee

For good and valuable consideration, the undersigned (jointly & individually) agree to be personally liable for all indebtedness incurred by the above. The undersigned (jointly & individually) further agree to be personally liable for all indebtedness based on the extension of credit to any corporation or business entity with which the undersigned is or may be affiliated. If a default in the terms of payment occurs on any account on which the undersigned is or may be liable, and which is placed with an attorney or bonded collection agency, the undersigned (jointly & individually) agree to pay an additional 30% collection charge on the entire unpaid balance. The undersigned authorizes you or your agent, to verify any of the above information, now or in the future, and/or obtain additional information by securing data from a credit-reporting agency.

The attachment of a balance sheet will aid in issuing the maximum amount of credit desired. If this application for open account is approved, we agree to observe your terms, which we understand to be as follows: NET 30 DAYS

7/25/05
(DATE)

__Ronald Ferrara Pres__
(SIGNATURE OF INDIVIDUAL & POSITION)

____
(DATE)

TOTAL P.01

Exhibit A

# Carl Schaedel and Co., Inc.

## DEALER AGREEMENT

Agreement made in duplicate and dated this __15__ day of __May__, 20__07__, between

**Carl Schaedel and Co., Inc. of Fairfield, NJ ("Schaedel")**

and __Katherine Fenara Pres__ of __Deal Purchasing Inc__ ("Dealer").
                                                  DBA "INNERSPACE"

1) **APPOINTMENT:** Schaedel appoints and authorizes the Dealer, and Dealer accepts appointment under the terms of this Agreement on a non-exclusive basis, as a retailer of selected individual or all Schaedel product lines as described in Section 3. The term "retailer" as used herein shall mean the promotion and sale of Schaedel products only to (a) end-use retail purchasers, (b) contractors, (c) builders/remodelers, and (d) architects. Dealer is not authorized to offer for sale or sell any Schaedel products to wholesalers, buying services, groups, cooperatives, or other retailers.

2) **TERM OF AGREEMENT:** The term of this Agreement is one year, commencing on the above date, and the Agreement shall be renewed automatically on a year-to-year basis. Either party to this Agreement may cancel the Agreement without cause by delivering at least 30 days prior written notice of termination to the other party to this Agreement.

3) **PRODUCT LINES:** Product lines covered by this Agreement include all those identified by Schaedel in then current sales programs.

4) **PRICES AND POLICIES:** Schaedel products shall be sold to the Dealer at prices, terms, and conditions set forth in Schaedel Price Lists and Sales Programs in effect at the time of sale.

5) **PAYMENT TERMS:** Dealer agrees to make prompt payment of all invoices rendered by Schaedel in accordance with then current payment terms as published by Schaedel. Dealer further agrees to pay all late charges as published by Schaedel and within allowable law as a result of failure to pay in accordance with the then current payment terms.

6) **INTERNET SALES:** Dealer shall comply with all current Internet sales policies as set forth and published by each product line manufacturer and/or Schaedel.

7) **DEALER OBLIGATIONS:** Dealer agrees to establish and maintain attractive, effective, and fully stocked displays of current model products for each primary product line as required in Schaedel programs published from time to time. Dealer also agrees to put forth sales efforts and support for Schaedel product lines more intensive and effective than that provided to competing products that may be offered for sale by Dealer and to make every effort to achieve increasing sales and maximized market potential for Schaedel product lines.

   Dealer agrees to actively promote any merchandising and sales promotion programs as offered from time to time by Schaedel. Dealer agrees to make full use of all display fixturing and materials provided by Schaedel for the sole benefit of promoting and selling Schaedel products.

   Dealer agrees to send its sales personnel to Schaedel facilities at least twice per year in addition to scheduled meetings at Dealer's facilities as needed, for appropriate training on Schaedel products.

8) **DELIVERY:** Deliveries are not provided by Schaedel. Schaedel will, however, make available optional delivery services to Dealer through independent 3rd parties as a convenience to Dealer. To the extent that Schaedel incurs expenses directly related to servicing installed product that was damaged and therefore not covered by product warranties, Dealer agrees to accept billing and pay for the actual costs of such service, including parts needed to replace those damaged.

9) **INSTALLATION:** Installation services are not provided by Schaedel. Dealer agrees to provide or make arrangements for proper installation of Schaedel products including testing the product upon installation, fully demonstrating the product, and delivering operating instructions as provided. To the extent that Schaedel incurs expenses directly related to servicing product that was not properly installed according to manufacturer installation instructions supplied with the product and

4 Sperry Road   Fairfield, NJ   07004
(973) 244-1311   Fax (973) 244-0822   www.carlschaedel.com

_Exhibit D_

● Page 2

therefore not covered by product warranties, Dealer agrees to accept billing and pay for the actual costs of such service, including parts needed to replace those damaged as a result of improper installation.

10) **SCHAEDEL OBLIGATIONS:** Schaedel agrees to support Dealer's selling efforts by selling appliances to the Dealer and offering training programs for Dealer's salespersons. To further assist Dealer in selling Schaedel products, Schaedel may, at its discretion, offer merchandising and sales promotion programs to Dealer and display fixturing and materials for the sole benefit of promoting and selling Schaedel products.

11) **DISCONTINUANCE OF PRODUCTS:** Schaedel may, without notice to Dealer, before or after acceptance of orders from Dealer, discontinue or limit delivery of any product or provide product with modified specifications, design, or construction without liability to Dealer.

12) **CANCELLATION:** Schaedel may cancel Agreement with Dealer by giving written notice to Dealer at any time after the occurrence of (a) close out or sale of any part of the Dealer's business related to the handling of Schaedel products, or commencement of dissolution or liquidation of Dealer if a partnership or corporation; or (b) discovery of any misrepresentation as to the direct or indirect ownership of Dealer; or (c) default by Dealer under any credit terms, payment terms and/or security agreement between Dealer and Schaedel; or (d) failure to comply with any of the terms and conditions of this Agreement. Upon such cancellation, Schaedel may decline to honor unfilled orders placed prior hereto. Such orders, and all orders placed by Dealer after cancellation, may be accepted or rejected by Schaedel at its election. Sales or acceptance of orders and/or shipment of Schaedel products do not have the effect of rescinding cancellation of this Agreement. Neither party is entitled to any compensation or reimbursement for loss of prospective profits, anticipated sales, or other losses or damages occasioned by the termination of their relationship and/or this Agreement.

13) **GENERAL PROVISIONS:** Dealer shall not assign or otherwise transfer this Agreement or any interests in or rights under this Agreement without the prior written consent of Schaedel. This Agreement supersedes any and all prior understandings and agreements, whether written or oral, entered into between Dealer and Schaedel with respect to the subject matter of this Agreement. Any failure on the part of Schaedel to enforce at any time any provision of this Agreement shall not be deemed or construed to be a waiver of such provision or of the right of Schaedel thereafter to enforce such provision or any other provision of this Agreement.

Carl Schaedel and Co., Inc.

By: _____

JG Lilioux
(Print name and title)

Deal Purchasing, Inc.
DBA "INNERSPACE"
(Legal Business Name)

By: Kathryn Ferrara Pres.

Katherine Ferrara Pres.
(Print name and title)

If Dealer is a corporation, only a duly authorized officer may sign this Agreement and the title of the officer must be specified. If Dealer is a partnership, only a partner may sign this Agreement and "Partner" must be specified as title. If Dealer is a sole proprietorship, only the proprietor may sign this Agreement and "proprietor" must be specified as title.

# Carl Schaedel and Co., Inc.

4 Sperry Road, Fairfield, NJ 07004
(973) 244-1311   Fax (973) 244-1680   www.carlschaedel.com

## STATEMENT

Date:   07/22/2009
Customer Number:   200451

Page 1 of 1

Deal Purchasing, Inc. dba Innerspace
130 Eagleview Blvd.

Exton, PA 19341-   USA

Please remit payments to:
Carl Schaedel and Co., Inc.
PO Box 34913
Newark, NJ 07189-4913

| Reference Number | Type | Transaction Date | Due Date | Customer PO # | Original Amount | Balance Due |
|---|---|---|---|---|---|---|
| *PA.41591 | IN | 02/07/2008 | 01/28/2009 | Display Viking | 9,702.00 | 9,702.00 |
| *PA.44970 | IN | 06/30/2008 | 06/30/2009 | PA.35307 | 15,379.00 | 15,379.00 |
| *PA.47159 | IN | 09/29/2008 | 09/29/2009 | PA.36967 | 9,008.40 | 9,008.40 |
| PA.48317 | IN | 11/17/2008 | 12/17/2009 | 8098 | 84,873.60 | 84,873.60 |
| PA.48318 | IN | 11/17/2008 | 12/17/2008 | 8178 | 9,508.80 | 9,122.77 |
| PA.48358 | IN | 11/17/2008 | 12/17/2008 | 1038 | 3,247.98 | 3,247.98 |
| PA.48359 | IN | 11/17/2008 | 12/17/2008 | 8228 | 4,808.00 | 4,808.00 |
| PA.48376 | IN | 11/18/2008 | 12/18/2009 | 11188 | 951.00 | 951.00 |
| PA.48532 | IN | 11/24/2008 | 12/24/2008 | 112108 | 78.62 | 78.62 |
| PA.48643 | IN | 12/01/2008 | 12/31/2008 | 11218 | 8,566.44 | 8,566.44 |
| FC.18749 | FC | 01/05/2009 | 01/05/2009 | | 1,347.94 | 1,347.94 |
| PA.48833 | IN | 12/10/2008 | 01/09/2009 | 11048 | 98.84 | 98.84 |
| PA.48877 | IN | 12/11/2008 | 01/10/2009 | 8088 | 2,641.22 | 2,641.22 |
| PA.48945 | IN | 12/15/2008 | 01/14/2009 | 1288 | 2,907.20 | 2,907.20 |
| PA.49030 | IN | 12/18/2008 | 01/17/2009 | 12178 | 1,328.30 | 1,328.30 |
| FC.18986 | FC | 02/03/2009 | 02/03/2009 | | 255.35 | 255.35 |
| FC.19451 | FC | 04/03/2009 | 04/03/2009 | | 1,091.51 | 1,091.51 |

Type Codes:
IN = Invoice
CM = Credit Memo
FC = Finance Charge
DM = Debit Memo
CB = Chargeback
OA = Payment Left on Account
NS = Insufficient Funds Fee
UP = Unapplied Payment

| Total Current: | 1 - 30 Days | 31 - 60 Days | Over 60 Days |
|---|---|---|---|
| 0.00 | 0.00 | 0.00 | 155,408.17 |

Notes: * - invoices financed through Capital Solutions

| Balance Due: |
|---|
| 155,408.17 |